**In re Karita WARREN, Debtor.**

**Karita WARREN, Plaintiff,**

**v.**

**SouthTRUST BANK, NA, Defendant.**

**Bankruptcy No. 98–00737–BGC–13.
Adversary No. 98–00042.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

May 8, 1998.

Chris Shepherd, Birmingham, AL, for Plaintiff.

Alan Levine, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION ON THE DEBTOR'S "COMPLAINT TO RECOVER AUTO"

BENJAMIN COHEN, Bankruptcy Judge.

The matter before the Court is the debtor's *Complaint to Recover Auto* filed on February 9, 1998. After notice, a scheduling conference was held on April 13, 1998. Mr. Chris Shepherd, the attorney for the debtor, and Mr. Alan Levine, the attorney for the defendant, SouthTrust Bank, NA, appeared. At the conference, counsel indicated that an evidentiary hearing would not be necessary and that they wished to submit the matter on a written stipulation of facts and on briefs. The Court agreed and suggested that the matter would be taken under advisement after receipt of those documents.

While the parties did not submit the stipulation or the briefs, the Court has taken the matter under advisement and has made its decisions based on the uncontested facts contained in the debtor's complaint.[1]

### I. Findings of Facts

SouthTrust Bank financed the debtor's purchase of a 1995 Mitsubishi automobile and holds a perfected security interest in that automobile. On January 31, 1998, after the debtor failed to make all payments required under the parties' contract but before the debtor filed bankruptcy, SouthTrust repossessed the automobile.

The debtor filed her Chapter 13 bankruptcy on February 3, 1998. And on February 9, 1998, the debtor filed the pending 11 U.S.C. § 542(a) complaint in which she seeks the return of the automobile.

### II. Conclusions of Law

Section 542(a) provides that anyone:

---

1. According to representations made by counsel at the scheduling conference, the material facts alleged by the debtor in her complaint are not disputed.

in possession, custody, or control, during the case, of *property that the trustee may use, sell, or lease under section 363 of this title,* or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a)(emphasis added). And according to 11 U.S.C. § 363(b)(1), the trustee in bankruptcy may only "use, sell or lease ... *property of the bankruptcy estate.*" *Id.* (emphasis added). Consequently, this debtor may recover her automobile from SouthTrust pursuant to section 542(a) of the Bankruptcy Code *only if the automobile is property of her bankruptcy estate.* In this case, that may occur only if the automobile is property of the estate by virtue of the bankruptcy filing or because the debtor has exercised a post-repossession, state law, right of redemption. As is discussed below, this Court finds that neither has occurred. Consequently, the debtor is not entitled to return of the automobile.

## A. The automobile did not become property of the bankruptcy estate at the time of the bankruptcy filing

In *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280 (11th Cir.1998), the Court of Appeals for the Eleventh Circuit held that under Alabama law, a secured party, upon repossession of an automobile, acquires both title to and the right to possession of the automobile and the automobile's purchaser retains only a statutory right of redemption under Code of Ala.1975, § 7–9–506. In *Lewis,* the court concluded that while such a right to redeem the automobile would become property of a bankruptcy estate, the automobile itself does not. And because the automobile does not, following repossession prior to bankruptcy (without subsequent redemption), the automobile is not subject to turnover under section 542(a). Writing for the court, Chief Judge Joseph W. Hatchett explained:

We are not convinced, however, that the mere existence of the estate's ability to redeem the automobile renders the automobile itself "property of the estate," at least to the extent that it should be turned over pursuant to 11 U.S.C. § 542(a). In accordance with state law, one must take certain affirmative steps to change the otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest. As relevant to this case, the trustee had to "tender[ ] fulfillment of all [secured] obligations" plus expenses to exercise the estate's right of redemption. Ala.Code § 7–9–506; cf. *Commercial Federal,* 85 F.3d at 1557, 1558, 1561 (reversing the bankruptcy court's denial of the mortgagee's motion for relief from the automatic stay where the debtor filed a Chapter 13 petition after the foreclosure sale and the plan proposed simply to reinstate his mortgage payments, and holding that Alabama's statutory right of redemption "cannot be modified under a Chapter 13 plan, and ... must be exercised as dictated under Alabama law by making a lump sum payment within one year of the foreclosure sale that includes the principal, interest and other charges under the mortgage"). But cf. *National City Bank v. Elliott (In re Elliott),* 214 B.R. 148, 150, 152–53 (6th Cir. BAP 1997) (affirming the bankruptcy court's order to turn over a automobile where the confirmed Chapter 13 plan provided for "payments over the life of the plan" to the secured creditor, even though the debtor lacked title or possession and Ohio's redemption statute mirrored that of Alabama's). At the time of their adversary proceeding, the Lewises' proposed Chapter 13 plan merely tendered to Hall Motors sixty-two cents on the dollar in return for Elgin Lewis's continued use of the automobile. Such proposal offered no indication to Hall Motors that the estate had chosen to exercise its right of redemption, that is, to "fulfill" Elgin Lewis's secured obligation plus expenses in accordance with Alabama law. See Ala. Code § 7—9–506. Nor could the Lewises plausibly convince us that the proposal adequately protected Hall Motors's ownership and possessory interests in the automobile. See 11 U.S.C.A. § 363(e); *Capital Factors,* 1 F.3d at 1160. Accordingly, we hold that the Lewises' bankruptcy estate's

only interest in the repossessed automobile—a bare right of redemption—failed to render the automobile "property of the estate" under 11 U.S.C. § 541(a)(1) and subject to turn-over under 11 U.S.C. § 542(a).

137 F.3d at 1284–1285.

Based on the above, this Court concludes that this debtor's automobile did not become property of her bankruptcy estate at the time of the bankruptcy filing and thus section 542(a), by its terms, does not, as yet, mandate the return of the automobile.

### B. The automobile does not become property of the bankruptcy estate unless the debtor exercises her state law right of redemption

 As noted above, while the circuit court in *Lewis* held that a debtor's automobile does not become property of the estate, that court did hold that a debtor's statutory right to redeem the automobile in accordance with Code of Ala.1975, § 7–9–506, does. *Lewis* at 1284. Therefore if this debtor exercises that right in accordance with Alabama's redemption statute, she would be entitled to bring her automobile into her bankruptcy estate as estate property.

The requirements for redemption in Alabama are contained in Code of Ala.1975, § 7–9–506. That section provides:

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 7–9–504 or before the obligation has been discharged under Section 7–9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by *tendering fulfillment* of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

Code of Ala.1975, § 7–9–506 (emphasis added).

Obviously, the operative phrase in section 7–9–506 is "tendering fulfillment" and the meaning of that phrase is the key to the resolution of the matter before this Court. Fortunately, that meaning is easily ascertainable.

The meaning of the phrase "tendering fulfillment" is explained in the "Official Comment" to section 7–9–506 as, " 'Tendering fulfillment' obviously means more than a new promise to perform the existing promise; it requires payment in full of all monetary obligations then due and performance of all other obligations then matured." Code of Ala. 1975, § 7–9–506 cmt.[2] The comment, along

2. While the official comments to the Uniform Commercial Code are not controlling as an absolute expression of legislative intent, they are a "valuable aid" in the construction of code provisions. *Simmons v. Clemco Industries*, 368 So.2d 509, 514 (Ala.1979). The Court of Appeals for the Eleventh Circuit has employed the official comments to the Uniform Commercial Code to interpret Alabama law, see *Leasing Service Corp. v. Hobbs Equipment Co.*, 894 F.2d 1287, 1290 (11th Cir.1990); as have Alabama's appellate courts. See *Forestry Equipment Co. of Alabama, Inc. v. Orix Credit Alliance, Inc.*, 619 So.2d 1350, 1355–1356 (Ala.1993); *Transamerica Commercial Fin. Corp. v. Union Bank & Trust Co.*, 584 So.2d 1299, 1303 (Ala.1991); *Wilson v. World Omni Leasing, Inc.*, 540 So.2d 713, 716 (Ala.1989); *Skelton v. Druid City Hospital Board*, 459 So.2d 818, 821 (Ala.1984); *Lapeyrouse Grain Corp. v. Tallant*, 439 So.2d 105, 108 (Ala.1983); *First Alabama Bank of Montgomery v. Parsons*, 426 So.2d 416, 418 (Ala.1982); *Day v. Ray E. Friedman & Co.*, 395 So.2d 54, 57 (Ala.1981); *Massey–Ferguson Credit Corp. v. Wells Motor Co.*, 374

So.2d 319, 321–322 (Ala.1979); *Loeb & Co. v. Martin*, 295 Ala. 262, 267, 327 So.2d 711, 715 (Ala.1976); *Robertson v. Blalock*, 514 So.2d 1037, 1038 (Ala.Civ.App.1987), *cert. denied*, 514 So.2d 1039 (Ala.1987); *McCord v. State*, 501 So.2d 520, 524 (Ala.Crim.App.1986); *First Alabama Bank of Guntersville v. Hunt*, 402 So.2d 992, 994 (Ala.Civ.App.1981), *cert. denied*, 402 So.2d 995 (Ala.1981); *Holsonback v. First State Bank of Albertville*, 394 So.2d 381, 383 (Ala.Civ. App.1981), 394 So.2d 384 (Ala.1981).

Similarly, official comments have been accorded substantial weight in interpreting provisions of the Uniform Commercial Code in other jurisdictions. *Thunder Basin Coal Co. v. Southwestern Public Service Co.*, 104 F.3d 1205, 1213 (10th Cir.1997); *In re Bristol Associates, Inc.*, 505 F.2d 1056, 1058 n. 2 (3rd Cir.1974); *Omaha Pollution Control Corp. v. Carver–Greenfield Corp.*, 413 F.Supp. 1069, 1087 n. 4 (D.Neb.1976); *Brace v. United States (In re Brace)*, 163 B.R. 274, 278 (Bankr.W.D.Pa.1994); *ABM Escrow Closing and Consulting, Inc. v. Matanuska Maid, Inc.*, 659 P.2d 1170, 1172 (Alaska 1983); *Roswell Bank v.*

with the statute, explains further that an unconditional, immediate, present payment in cash of the entire debt secured by the repossessed collateral, plus the expenses of retaking, holding and preparing the collateral for sale, in arranging for the sale, and, if provided for in the security agreement, reasonable attorneys' fees and legal expenses, is necessary to satisfy the "tendering fulfillment" requirement of section 7–9–506.

Many jurisdictions accorded the phrase this same interpretation.[3] And this Court adopts it for purposes of the pending matter. Consequently, the only remaining issue here, as it was in *Lewis*, is whether the debtor's Chapter 13 proposal is an exercise of her redemption right, thus entitling her to relief under the Bankruptcy Code's turnover provisions.

### C. The debtor has not exercised her Code of Ala.1975, § 7–9–506 state law right of redemption

In *Lewis*, the court held that the plan proposed by the Chapter 13 debtor, that is to pay the secured creditor 62% of its debt over time, through periodic payments in return for the debtor's continued use of the automobile, failed to satisfy the "tendering fulfillment" requirement of Code of Ala.1975, § 7–9–506.

In this debtor's Chapter 13 plan, confirmed by order of this Court on March 24, 1998, the debtor proposed to permit SouthTrust to re-

*Atlanta Utility Works, Inc.*, 149 Ga.App. 660, 255 S.E.2d 124, 125 (1979); *Carlund Corp. v. Crown Center Redevelopment*, 849 S.W.2d 647, 650 (Mo. Ct.App.1993); *Gardner Zemke Co. v. Dunham Bush, Inc.*, 115 N.M. 260, 850 P.2d 319, 324 n. 2 (1993); *Davis v. Suggs*, 10 Ohio App.3d 50, 460 N.E.2d 665, 667 (1983); *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 816 (Wyo.1992).

**3.** " 'Tendering fulfillment' requires an actual, present, unconditional, physical production of payment, and a mere willingness, readiness, or proposition to pay is not enough." *Task Enterprises, Inc. v. Pratt Adjustment Co.*, 695 P.2d 762, 763 (Colo.Ct.App.1984)("tendering fulfillment" did not occur where debtor proposed to pay the secured party the total amount due if he were allowed to inspect the vehicle; conditional tender does not satisfy "tendering fulfillment" requirement). "To make an effective tender, the debtor must actually attempt to pay the sums due; mere offers to pay, or declarations that the debtor is willing to pay, are not enough." *Southfork Investments Group, Inc. v. Williams*, 706 So.2d 75, 79 (Fla.Ct.App.1998)(debtor's attempt to redeem was not effective where purported tender consisted of a letter to secured party's attorney informing him of debtor's "intention to redeem" and advising that debtor had deposited the sums owed under the obligation secured by the collateral in his attorneys' trust account and stating that the debtor was "willing" to pay all of the secured party's reasonable legal expenses and costs "after presentment of proper affidavits as to fees and costs, and review by an appropriate judicial official"). "[A]ctual production of the subject matter of the tender—in this case, the money or its equivalent—is a reasonable threshold requirement ..." of an effective tender. *Telcoe Credit Union v. Eackles*, 293 Ark. 149, 732 S.W.2d 477, 479 (1987)(where debtor verbally told secured party that she would pay the amount due on the secured loan, and debtor's attorney wrote a letter advising the secured party

that the debtor was "ready, willing and able" to tender the amount owed on the secured loan, but debtor never tendered the actual cash or a check to satisfy the amount owed, "tendering fulfillment" requirement was not satisfied). " 'Tender is an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom tender is made the condition or obligation would be immediately satisfied. There must be an unconditional offer to perform, coupled with a manifested ability to carry out the offer, and a production of the subject matter of the tender ...' " *Id.* at 478, quoting *Cook v. Talbert*, 216 Ark. 370, 373, 225 S.W.2d 682, 684 (1950).

See also *Voutiritsas v. Intercounty Title Co. of Illinois*, 279 Ill.App.3d 170, 215 Ill.Dec. 773, 664 N.E.2d 170, 180 (1996)(where plaintiffs never deposited any money with either the defendant or the court, letter sent by plaintiffs' attorneys to defendant stating that plaintiffs "might consider tendering" $609,223.83 plus a $98,000 service fee to redeem did not satisfy "tendering fulfillment" requirement); *White v. Associates Commercial Corp.*, 20 Ark.App. 140, 725 S.W.2d 7, 9 (1987)(where secured party provided the debtor with figures for the payoff amount and with the dates through which those figures would remain good, and amount due would increase at the expiration of each time period as another month's interest was added, and debtor failed to tender the payoff amount until after the second expiration date, at which time the tendered amount was no longer correct, debtor's tender was insufficient); *Rogers v. Associates Commercial Corp.*, 129 Ariz. 499, 632 P.2d 1002, 1006 (1981)(when acceleration occurs or is declared in accordance with the terms of a security agreement prior to a tender by the debtor of the amounts in default, debtor must tender payment of the accelerated balance, plus expenses, to satisfy "tendering fulfillment" requirement).

tain its security interest in the automobile, while the debtor would pay SouthTrust, through her Chapter 13 case, the value of the automobile, with interest, in monthly installments of $380, over a period not to exceed 60 months. The value the debtor proposed to pay was $13,000.00; however, the debt owed to SouthTrust was, according to the debtor's plan summary, $17,190.55.

In regards to the pending case, this Court reaches the result reached in *Lewis,* that is the debtor's Chapter 13 proposal does not qualify as an exercise of her state law right of redemption. In support of that conclusion, the Court finds that:

1. The debtor's plan constitutes a promise, commitment, or proposal to pay SouthTrust over a period of time, rather than an immediate present payment;

2. The debtor proposes to pay SouthTrust $13,000.00 of the bank's $17,190.55 debt, or 76% of the obligation secured by the automobile, rather than the full amount of the secured obligation;[4]

3. The debtor's plan does not include any provisions for the bank's repossession expenses and legal expenses; and

4. The debtor proposes to possess, and use, the automobile before redemption is effectuated.

The above four reasons taken together, although any one is sufficient to disqualify this debtor's proposal, is clear justification for this Court to find that the debtor has not, through her plan or otherwise, properly exercised her statutory right of redemption and therefore she is not entitled to any of the benefits that such an exercise bestows. On that basis, this Court concludes that this debtor's automobile is not property of her bankruptcy estate and thus section 542(a), by its terms, does not mandate the return of the automobile.

### III. Conclusion

■ In conformity with the decision in *Charles R. Hall Motors. Inc. v. Lewis (In re Lewis),* 137 F.3d 1280 (11th Cir.1998), this Court concludes that because the repossession of the debtor's automobile occurred before the debtor filed her bankruptcy petition, the debtor's automobile is not property of her bankruptcy estate. Similarly, because the debtor has subsequently failed to exercised her right to redeem the automobile, the automobile remains outside of her estate. Consequently, the automobile is not subject to turnover pursuant to section 542(a) and the relief requested in the debtor's *Complaint to Recover Auto* is therefore due to be denied.[5] A separate order will be entered in accordance with this memorandum opinion.

4. The debtor proposes to pay unsecured creditors 100% of their claims. Even if the bank may eventually receive the remaining 24% unsecured portion if its claim as part of the debtor's payment of her unsecured debt, the bank would receive that percentage only after considerable time, and of course without interest. See also note 5.

5. If the debtor had proposed in her plan to pay 100% of the obligation secured by the automobile, plus SouthTrust's repossession and legal expenses, would the plan have satisfied the "tendering fulfillment" requirement? The argument can be made that the circuit court's specific finding that the debtor's 62% plan did not satisfy the "tendering fulfillment" requirement leaves open the possibility that a Chapter 13 plan which proposes payment in full of a secured obligation, plus expenses, albeit over time, might satisfy that requirement. However, this Court believes that such a conclusion would run afoul of the circuit court's previous decision in *Commercial Fed. Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555 (11th Cir.1996), and would ignore Judge Hatchett's reference to *Smith* in the sentence

immediately preceding the statement regarding the inadequacy of the debtor's 62% plan. In *Smith,* the court held that the Chapter 13 debtor could not, subsequent to foreclosure, exercise his statutory right to redeem real property, under Alabama law, by proposing to reinstate his present mortgage payments and pay his mortgage arrearage over time, because the Alabama redemption statute requires, for redemption of real property, that a mortgagee make a lump sum payment of all amounts due under the mortgage to the mortgagor within a year after foreclosure. According to the court in *Smith,* while the debtor's right to redeem real property is property of his bankruptcy estate, the debtor's attributes in that property, including the manner in which he exercises that property right, is defined by state law, and since Alabama law requires a lump sum payment within the year after foreclosure, redemption cannot accomplished in another fashion through Chapter 13. "This right [of redemption] cannot be modified under a Chapter 13 plan, and it must be exercised as dictated under Alabama law by making a lump sum payment within one year of the foreclosure sale that includes the principal, interest, and other charges

## ORDER

In conformity with and pursuant to the Memorandum Opinion entered contemporaneously herewith, it is **ORDERED, ADJUDGED AND DECREED** that:

1. The relief requested in the debtor's *Complaint to Recover Auto* is **DENIED**; and

2. Judgment is entered in favor of the defendant and against the plaintiff.

under the mortgage." 85 F.3d at 1561 (parenthetical added). Likewise, allowing the redemption of an automobile over time, by periodic payments, through a Chapter 13 plan, but all after repossession of that automobile, would constitute an impermissible modification of section 7–9–506's "tendering fulfillment" requirement; a result which is forbidden by the holding in *Smith*.